[Civ. No. 4659. Second Appellate District, Division One.—February 11, 1927.]

K. C. IWATA et al., Appellants, v. A. GOLDBERG et al., Respondents.

[1] CONTRACTS—SHIPMENT OF CANTALOUPES—SALES—CONSIGNMENT—AGENCY.—Where the consignees under a written contract for the shipment of cantaloupes agree to accept and dispose of the same for the account of the consignors, to use their best efforts to obtain the highest price obtainable, to render detailed and accurate account of each sale, accompanied by check in full less amount advanced, freight, demurrage, etc., and commissions, and to honor sight draft for an amount equal to the cost on each car, such agreement is not a sale contract, but is a contract for consignment of merchandise by principal to agent.

[2] ID. — AGREEMENT TO HONOR DRAFTS — GUARANTY OF COST — CONSTRUCTION.—Where such contract contains a promise on the part of the consignees to honor drafts drawn by the consignors, on

---

1. See 11 R. C. L. 755; 22 Cal. Jur. 906.

account of each carload shipment, for an amount not less than the stated estimate of cost, and in accounting for the sale of each such shipment, the consignees are to deduct and retain the amounts of these drafts, which are described as amounts advanced "on account of price guaranteed," but there is not in the contract any definite or intelligibly certain guaranty of price, or warrant by consignees that consignors shall go without loss on any one of the shipments, or even on all of them together, it cannot be said that the consignees' agreement to honor such drafts constitutes a separate guaranty of the cost of each shipment, independent and apart from any other.

(1) 25 **C. J.**, p. 343, n. 57.    (2) 25 **C. J.**, p. 373, n. 7.

APPEAL from a judgment of the Superior Court of Los Angeles County. Percy S. King, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Walter H. Sprague, Moote & Patterson and E. S. Patterson for Appellants.

Milton M. Cohen, James S. Roche and C. O. Bacon for Respondents.

CONREY, P. J.—This is an action to recover money claimed under a written contract for shipment of cantaloupes by plaintiffs to defendants. The demand of plaintiffs is for the sum of $2,999, balance claimed to be due in accordance with the contract, the purport of which plaintiffs attempted to state in their complaint, and therein described the contract as a contract of sale. The defendants included in their answer a complete copy of said contract. Defendants admitted their liability to the extent of $232.41 and no more, which admitted sum was duly tendered to the plaintiffs. After trial of the action the court made its findings of fact and awarded judgment for said sum of $232.41. The plaintiffs have appealed from the judgment.

[1]    The contract between the parties reads as follows:

"This agreement made by and between K. C. Iwata & Co., of Brawley, California, hereinafter referred to as the consignor and Goldberg Bros. of Youngstown, Ohio, hereinafter referred to as the consignee, witnesseth:

81 Cal. App.—20

"That for and in consideration of three thousand seven hundred and fifty dollars ($3750.00) to be paid by consignee to the consignor immediately upon signing of this contract the consignor will ship to the consignee at his place of business fifty (50) cars cantaloupes to be grown in Brawley District, Imperial Valley, California; said shipment to be made regularly during the shipping season of 1922 at the rate of one or two cars daily commencing on or about June 1, 1922.

"The consignor assumes the obligation of routing and regulation of shipments to conform to the time of maturity of the cantaloupes which must be in merchantable condition and suitable for shipment to Eastern markets, and labeled 'Serenity' Brand.

"The consignee agrees to accept and dispose of for the account of the consignor, all cars to be shipped in accordance with the above terms and to use his best efforts to obtain the highest price obtainable at the time of arrival at destination.

"Consignee agrees to render detailed and accurate account of sale immediately after each car shall have been sold and such account sale shall be accompanied by check in full less amount advanced on account of price guaranteed also less all freight, demurrage, icing charges, etc., also less commission of ten (10%) per cent of the amount of the gross sale. Remittances as above to be mailed forthwith to the consignor at his Brawley, California, office. All records relating to transactions under this contract in possession of or that come into possession of the consignee, shall be and shall remain open for inspection by the consignor or his appointed representative. Consignee agrees to wire at his own expense to the consignor the gross sale of each car as sold.

"The consignor shall draw at sight upon the consignee for an amount equal to the cost (approximately $1.10 per standard and pony crate and $0.45 per flat crate) on each car at time of shipment and the consignee guarantees to honor such drafts when presented for payment with bill of lading attached, less $75.00 per car advanced.

"The consignee shall furnish to the consignor at the earliest possible date all information and data relating to loss or damage to the cantaloupes while in possession of the railroad company, together with all paid freight bills,

bills of lading, copy of protest and inspection reports; and all claims for loss or damage shall be controlled and collected by the consignor for his account.

"It is understood that consignor shall not be held responsible for failure to ship the number of cars stipulated in this agreement, if prevented from doing so by acts of Providence, crop failure, or other causes beyond the control of the consignor and in the event that all cars are not shipped as agreed then the consignor agrees to refund immediately at the close of the shipping season an amount equivalent to the money advanced ($75) on each car not shipped."

On examining the record we find that there was no controversy about any of the facts found by the court, other than the controversy about the amount of balance due. The determination of that balance would depend first upon evidence showing the amounts advanced by the defendants to the plaintiffs, together with the items of charges and credits shown by the statements of accounts and other documents connected with the shipments and sales of forty-seven different carloads of cantaloupes. Apparently it has been assumed by counsel that the results of the figures would be such that on one interpretation of the contract the plaintiffs would be entitled to recover the amount demanded by them and upon the other, the alternative interpretation of the contract, plaintiffs would not be entitled to any more than the sum admitted and tendered by the defendants. We shall follow that assumption of fact.

It is shown that pursuant to said contract plaintiffs shipped forty-seven cars, and that by mutual agreement the remaining three cars named were not shipped. With each shipment of a carload of fruit plaintiffs sent a draft on defendants for a sum purporting to cover the cost of each car (less $75 per car advanced) at the time of shipment. It appears to be conceded that thirty-six of these amounts were paid (in three instances by check, without any draft), and on the last eleven drafts payment was refused, although the consignments were received and disposition and accounting made of them in the usual manner. In substance the fact is that plaintiffs are suing for the amounts which they claim were left unpaid by reason of the failure to honor those drafts.

The contract, as we look upon it, was not a sales contract, but was a contract for consignment of merchandise by principal to agent. [2] There was a promise on the part of the consignees to honor drafts drawn by the consignors, on account of each carload shipment, for an amount not less than the stated estimate of cost. In accounting for the sale of each such shipment, the consignees were to deduct and retain the amounts of these drafts, which were described as amounts advanced "on account of price guaranteed." But there is not in the contract any definite or intelligibly certain guaranty of price, or warrant by consignees that consignors should go without loss on any one of these shipments, or even on all of them together. Nevertheless, the consignors, plaintiffs herein, seek to recover on such supposed guaranty as a separate guaranty of the cost of each shipment, independent and apart from any other. So it is attempted here to compel the consignees to pay the amounts of said drafts covering estimated costs of the last eleven carloads, notwithstanding the fact that the defendants (although they did not make any advancements on these eleven carloads), have in fact accounted to plaintiffs for all sales of the merchandise shipped, and that the aggregate sum thus received leaves in the hands of the plaintiffs all of the net profits of the entire transaction.

Upon the facts stated, and our interpretation of the contract plaintiffs are not entitled to any larger amount than that which was conceded to them.

The judgment is affirmed.

Houser, J., and York, J., concurred.